SHIRLEY S. ABRAHAMSON, C.J.
¶ 35. (concurring). [1]1 agree with the majority opinion and Manitowoc County that the plain language of Wis. Stat. § 51.35(l)(e)l. and § 51.35(l)(e)2. provides different procedures, depending on the grounds stated for the patient's transfer. But interpreting these provisions literally, as the majority opinion does, without examining them in the context of Chapter 51 and without considering the policies and procedures the legislature has explicitly established in Chapter 51 violates the majority opinion's stated rules of statutory interpretation requiring it to interpret a statute reasonably to avoid absurd or unreasonable results.
*226 ¶ 36. I write not only to disagree with the majority opinion's statutory interpretation, but also as importantly, to commend Manitowoc County. When the County discovered what happened in the present case, it reviewed its practices. As a result of its self-examination, Manitowoc County is working with the entities across the State in which patients from Manitowoc County reside. The County has adopted procedures that follow the statutes, adhere to legislative policies, and protect patients' statutory liberty rights and interests, without increasing costs. Hats off to Manitowoc County!
I
¶ 37. In the present case, Samuel J.H. was transferred on September 22, 2011, from outpatient status in Manitowoc County to inpatient status in an inpatient facility in Green Bay, Wisconsin, about 40 miles away. Samuel J.H. stayed in Green Bay four days and on September 26, 2011, was transferred to the Trempealeau County Health Care Center in Whitehall, Wisconsin, about 215 miles from Green Bay.
¶ 38. On the day that Samuel J.H. was transferred from Manitowoc to Green Bay, he was provided with a piece of paper informing him that he had the following rights:
1. The right to contact a lawyer and a member of his family;
2. The right to have counsel provided at public expense "if indigent;" and
3. The right to petition a court in the county in which he is located or the committing court for review of the transfer.
*227 ¶ 39. This piece of paper was apparently intended to satisfy Wis. Stat. § 51.35(l)(e)l. and § 51.60(l)(a). I do not think it does. At a minimum, the form Samuel J.H. was given seems to conflict with Wis. Stat. § 51.60(l)(a) with regard to the appointment of counsel. The form seems to indicate Samuel J.H. is entitled to counsel at public expense only if he is indigent, but § 51.60(l)(a) explicitly requires no such indigency determination.[2]
¶ 40. Furthermore, Wisconsin Stat. § 51.60 requires that a patient "be referred as soon as practicable to the state public defender. . . ." Wisconsin Stat. § 51.60 is entitled "Appointment of Counsel" and reads, in pertinent part:
(1) Adults, (a) In any situation under this chapter in which an adult individual has a right to be represented by counsel, the individual shall be referred as soon as practicable to the state public defender, *228 who shall appoint counsel for the individual under s. 977.08 without a determination of indigency (emphasis added).
¶ 41. Samuel J.H. was not referred to the State Public Defender as soon as practicable.[3] Indeed, the State Public Defender was not informed of Samuel J.H.'s transfer until Samuel J.H. himself wrote a letter to Manitowoc County Circuit Court Judge Jerome Fox in November 2011. Judge Fox then informed the Manitowoc County Corporation Counsel of Samuel J.H.'s letter, and corporation counsel then referred the matter to the State Public Defender. Majority op., ¶¶ 8-10.
¶ 42. Thus, nearly two months passed between Samuel J.H.'s transfer to inpatient status and his referral to a public defender. But for Samuel J.H.'s own action in sending a letter to the Manitowoc County Circuit Court, he may never have had counsel appointed and may never have had a hearing. The initial failure of the County to refer Samuel J.H.'s transfer to the State Public Defender and the County's placing the onus on Samuel J.H. to obtain counsel (and advise his *229 family) do not comport with Wis. Stat. § 51.35(l)(e)l. or § 51.60. The purpose of the statutes and the legislative policy have been skirted in the present case by the majority opinion and the rights of the mentally ill have been diluted.
¶ 43. The legislature has declared that any person in need of care must have "access to the least restrictive treatment" appropriate for his or her needs and that in order "to protect personal liberties, no person who can be treated adequately outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility."[4]
¶ 44. The majority opinion does not facilitate least restrictive treatment and does not comport with the legislature's balancing the personal liberty interests of the individual and the protection of the individual and the public.[5]
*230 ¶ 45. Samuel J.H. has committed no crime. The State is providing him treatment because he has a mental illness. If the State is to restrain those with a mental illness, it must guard their liberty interests scrupulously. The legislature has explicitly adopted this policy and accorded the individual the services of the State Public Defender.
¶ 46. The majority opinion has wandered off the clearly marked legislative course mandating the protection of the basic liberty interests of the mentally ill.
¶ 47. The majority opinion does not guard the liberty interests of the mentally ill scrupulously.
¶ 48. The majority opinion fails to harmonize § 51.35(l)(e)l. and § 51.35(l)(e)2. and interpret the provisions in the context of the expressed legislative policy and the procedural safeguards. The majority opinion severely undermines a patient's statutory procedural rights, including the patient's statutory right to government-paid counsel. In failing to interpret and apply the statutes in a manner that makes sense and respects the legislative purpose and policy, the majority opinion allows manipulation of the rights of the mentally ill.[6] Statutes must not be interpreted and applied in such a manner as to permit manipulation of the *231 procedural rights of the mentally ill or to render statutory provisions meaningless or superfluous.
¶ 49. The result the majority opinion reaches is unreasonable in light of the text of the statute, the rights statutorily granted Samuel J.H., and the explicit legislative policy.
II
¶ 50. To ensure the rights of patients and compliance with the statutes, counties should follow Manitowoc's lead.
¶ 51. Manitowoc County Corporation Counsel explained at oral argument that subsequent to Samuel J.H.'s case, the County realized that Wis. Stat. § 51.35 was not well implemented. The County then worked with the various entities in which Chapter 51 patients reside and created and is following a standard written policy. The County now gives notice to the State Public Defender immediately when a patient is being transferred. A ten-day hearing is ordinarily held. Assistant Corporation Counsel Ryan O'Rourke noted that providing a ten-day hearing in every transfer is not a significant burden.[7] Corporation counsel stated that the new *232 effort does not require substantially more time or effort,[8] and in the end, ensures that the process is fair. As Corporation Counsel explained, "[I]t's the more legally conservative approach to take to protect the transfer."[9]
*233 ¶ 52. Because the majority opinion's interpretation of Wis. Stat. §§ 51.35 and 51.60 has wandered off the clearly marked legislative course of protecting the basic liberty interests of the mentally ill and leads to an absurd and unreasonable result, I cannot join the majority opinion. A reasonable and harmonious reading of §§ 51.35 and 51.60 leads to the conclusion that all patients with outpatient status transferred to inpatient status are referred to counsel and granted a hearing within ten days to determine whether the form of treatment resulting from the transfer is the least restrictive alternative and consistent with the treatment needs of the patient.
¶ 53. A measure of a society is how it treats its weakest members. The legislature has incorporated this ethos into the statutes, and this court should interpret the statutes to achieve the clearly stated legislative policy and purpose. The majority opinion does not.
¶ 54. For the reasons set forth, I write separately.

 Section § 51.60(l)(a), the section specifically referenced in § 51.35, explicitly states that the state public defender shall appoint counsel for any adult who has a right to be represented by counsel without a determination of indigency.
In contrast, the form given to Samuel J.H. states the right to counsel as follows: "The right to have counsel provided at public expense, as provided under s. 967.06 and ch. 977, if Subject is a child or is indigent... ."
A patient who receives and reads this form could easily be confused regarding the right to counsel and at whose expense counsel will be provided.
At the bottom of the form, the following Note appears:
In Manitowoc County, the Public Defender can be reached as follows:
State of Wisconsin Public Defender 933 South Eighth Street, Suite 102 Manitowoc, WI 54220 (920) 683-4690

 At oral argument, Assistant Corporation Counsel Ryan O'Rourke touched on the interpretation of the word "refer." He explained that in Manitowoc County, transferred patients are now "referred to the public defender's office and then [corporation counsel] leave[s] it in [the public defender's] hands as to make the decision on whether someone needs to be appointed. At least [we] notify [the public defender] and make them aware of it, and then that agency is responsible for making their own decision as to whether they're statutorily obligated to appoint counsel."
Oral Argument at 51:17-52:35, Manitowoc County v. Samuel J.H., 2012AP665, available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid==7191 (last visitedJune 28, 2013).

 Wisconsin Stat. §51.001, "Legislative Policy," reads as follows:
(1) It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provision of services which will assure all people in need of care access to the least restrictive treatment alternative appropriate to their needs, and movement through all treatment components to assure continuity of care, within the limits of available state and federal funds and of county funds required to be appropriated to match state funds.
(2) To protect personal liberties, no person who can be treated adequately outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility (emphasis added).

 The court has recognized that "[c]urrent mental health statutes reflect a balance between treating mental illness and protecting the individual and society from danger on the one hand, and personal liberty of the individual on the other. ... *230 Hence, from the first section of [Chapter 51], we see the tension between the role of the government to provide caring treatment (sometimes involuntarily and, if necessary, by force) and the personal liberty of the individual." Outagamie County v. Melanie L., 2013 WI 67, ¶¶ 43, 58, 349 Wis. 2d 148, 833 N.W.2d 607.

 The transferring entity determines what kind of hearing the patient gets by the way it fills out the transfer form. Samuel J.H. questions whether the entity should be able to decide not only on the transfer but also on the hearing rights of the patient.
Many patients, including Samuel J.H., probably could be classified under either Wis. Stat. § 51.35(l)(e)l. or § 51.35(l)(e)2. or both statutory provisions. Samuel J.H.'s social worker testified that he had violated two conditions of his outpatient treatment, *231 but she asserted that he was not transferred because of these violations of his treatment conditions. Majority op., ¶ 12. Thus, the transferring entity often, if not always, has an opportunity to decide between whether the patient is transferred for "medical and clinical" reasons or a "violation of conditions."
The majority opinion provides a blueprint for how authorities can fill out transfer papers to ensure that a patient does not receive a ten-day hearing. Unfortunately, the majority opinion may render the ten-day hearing and the procedural protections in § 51.35(l)(e)2.-5. relics of the past.

 Oral Argument at 40:30-40:45, Manitowoc County v. Samuel J.H., 2012AP665, available at http://www.wiseye.org/ Programming/VideoArchive/EventDetail.aspx?evhdid=7191 (last visited June 28, 2013).

 At oral argument, Assistant Corporation Counsel O'Rourke explained that some facilities in which Chapter 51 patients reside did not know how to appoint a hearing officer, indicating that the facilities may not be familiar with the statutory requirements of hearings. This revelation is cause for concern, yet the majority opinion remains oblivious to the practice. The Manitowoc County Corporation Counsel is assisting the facilities with which it works.
Assistant Corporation Counsel O'Rourke advised the court as follows:
[T]he biggest problem with Samuel J.H.'s case that I have with how it happened was that counsel wasn't appointed right away. And the statute doesn't require us to, the statute simply requires that we notify him of his right to counsel and provide him the contact information, but we as a county have taken it upon ourselves to, regardless of the reason for transfer, our office is notified immediately, which wasn't always happening. Probate is notified immediately, which wasn't always happening, whether we think a hearing's necessary or not, and the public defender is notified through probate and an attorney is appointed immediately, so that we're not having this delay that we had in Samuel's case where it was a month and a half before he requested the hearing. Under the statute do I think we have to do that? No, but I believe it's better procedure.
Oral Argument at 34:23-35:18, Manitowoc County v. Samuel J.H., 2012AP665, available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=7191 (last visited June 28, 2013).

 Assistant Corporation Counsel O'Rourke said in full:
Subsequent to Samuel J.H., and not that this has any effect on Samuel's case, but procedurally what we've done as a county is it became clear to me we needed a standard written set of policies to follow, we implemented those, we are holding the hearing regardless of the reason for transfer now, simply because I believe it's the more legally conservative approach to take to protect the transfer.
Oral Argument at 33:48-34:15, Manitowoc County v. Samuel *233 J.H., 2012AP665, available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=7191 (last visited June 28, 2013).